AO 91 (Rev. 08/09) Criminal Complaint

FILED BY ___V___ D.C.

MAR 10 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>SHAUMBRICA STUBBS,<br>LUCLESSE VERNESSE, and<br>SAMUEL CHARLES,<br>*Defendant(s)* | )<br>)<br>) Case No. 20-8116-wm<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___see attached affidavit___ in the county of ___Palm Beach and elsewhere,___ in the ___Southern___ District of ___Florida___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 1029(a)(2) | Access Device Fraud |
| Title 18, United States Code, Section 1344 | Bank Fraud |
| Title 18, United States Code, Section 1028A | Aggravated Identity Theft |

This criminal complaint is based on these facts:

see attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Sarah Schaut, Task Force Officer, USSS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 10, 2020

_____
*Judge's signature*

City and state: West Palm Beach, FL

William Matthewman, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, **Sarah Schaut,** being first duly sworn, hereby depose and state as follows:

1. I am employed with the Plantation Police Department and currently assigned to the Criminal Investigations Division (CID) as an Economic Crimes Detective. I have been employed in a law enforcement capacity since April 2011, with the past three years assigned to CID. I have been sworn as a Task Force Officer (TFO) with the United States Secret Service (USSS) since January 2019 and assigned to the South Florida Organized Fraud Task Force of the Miami Field Office. I have been trained to conduct criminal investigations involving or relating to the financial infrastructure of the United States, including identity theft, counterfeit United States currency, wire fraud and access device fraud. I have completed the Basic Recruit Certificate of Compliance for Law Enforcement Officers at the Institute of Public Safety, Davie, FL.

2. The facts in this affidavit come from my personal observations, my training and experience, review of police reports, and information obtained from other law enforcement officers and witnesses. Because this affidavit is provided for the limited purpose of establishing probable cause for the charges in the Complaint, this affidavit does not set forth ever fact known to me regarding this investigation.

## PURPOSE OF THE AFFIDAVIT

3. This affidavit is submitted for the limited purpose of establishing probable cause that SHAUMBRICA STUBBS, LUCLESSE VERNESSE, and SAMUEL CHARLES committed the offenses below:

- On or about December 10, 2018 and June 9, 2018, in Palm Beach County, Florida, and elsewhere, SHAUMBRICA STUBBS did knowingly and with intent to defraud use one or more unauthorized access devices during a one year period, and by such conduct, obtain anything of value aggregating $1,000 or more during that period, said conduct affecting interstate and foreign commerce, in violation of Title 18, United States Code, Sections 1029(a)(2) and 2; did knowingly execute a scheme or artifice to obtain any of the moneys, funds, and credits, owned by, or under the custody or control of, a financial institution by means of false or fraudulent pretenses, representations, or promises, in violation of Title 18, United States Code, Sections 1344 and 2; and during and in relation to an

- enumerated felony .did knowingly use, without lawful authority, a means of identification of another person, in violation of Title 18, United States Code, Sections 1028A and 2.
- Between January 30, 2017 and February 1, 2017, in Broward County, Florida, and elsewhere, SHAUMBRICA STUBBS and LUCLESSE VERNESSE did knowingly and with intent to defraud use one or more unauthorized access devices during a one year period, and by such conduct, obtain anything of value aggregating $1,000 or more during that period, said conduct affecting interstate and foreign commerce, in violation of Title 18, United States Code, Sections 1029(a)(2) and 2; did knowingly execute a scheme or artifice to obtain any of the moneys, funds, and credits, owned by, or under the custody or control of, a financial institution by means of false or fraudulent pretenses, representations, or promises, in violation of Title 18, United States Code, Sections 1344 and 2; and during and in relation to an enumerated felony .did knowingly use, without lawful authority, a means of identification of another person, in violation of Title 18, United States Code, Sections 1028A and 2.
- Between October 15, 2017 and April 27, 2018, in Palm Beach and Broward Counties and elsewhere, LUCLESSE VERNESSE and SAMUEL CHARLES did knowingly and with intent to defraud use one or more unauthorized access devices during a one year period, and by such conduct, obtain anything of value aggregating $1,000 or more during that period, said conduct affecting interstate and foreign commerce, in violation of Title 18, United States Code, Sections 1029(a)(2) and 2; did knowingly execute a scheme or artifice to obtain any of the moneys, funds, and credits, owned by, or under the custody or control of, a financial institution by means of false or fraudulent pretenses, representations, or promises, in violation of Title 18, United States Code, Sections 1344 and 2; and during and in relation to an enumerated felony did knowingly use, without lawful authority, a means of identification of another person, in violation of Title 18, United States Code, Sections 1028A and 2.

**THE GENERAL SCHEME**

4. Your affiant is a member of an investigative task force investigating an ongoing bank fraud scheme targeting elder victims living in South Florida. Based upon victim interviews and contact with the affected financial institutions, this section provides a general overview of how the fraud scheme generally works.

5. In general, each individual victim is telephonically contacted by a professional sounding caller. To your affiant's knowledge, the caller is always a female. That caller

states that she is a bank representative from the victim's bank. The caller tells the victim, falsely, that the victim's account has been compromised.

6. The bank and account type vary with each victim, but in general the caller is attempting to get access to the victim's credit and debit cards. According to the victims, the caller supplies banking information regarding the victim's account that convinces each victim that the call is legitimate. For example, multiple victims have stated that the caller had their last transaction information. The caller will then include some fictitious transaction descriptions with the legitimate transaction descriptions, which then convinces the individual victim that their account or bank card has been compromised.

7. The caller then offers to send a "bank representative" to the victim's home to exchange the "compromised" card with a new one. The victims report a "bank representative" arrives at their residence shortly thereafter, usually while the victim is still on the phone with the original caller. The "bank representative" then obtains the victims "compromised" debit and/or credit card(s) with the promise of returning with a new uncompromised card. Usually the caller has already convinced the individual victim into "verifying" his or her PIN number. After the "bank representative" leaves with the compromised cards, that representative and another coconspirator then spend money as quickly as possible, often withdrawing cash from ATMs, purchasing money orders from Publix, and otherwise using the accounts as quickly as possible. Surveillance video obtained from the various stores and ATMs show that the suspects utilizing the cards are often speaking on the telephone with an unknown person while at the Publix/Store or bank ATM machine.

8. This fraud scheme has been ongoing since at least 2016 and continues through the present. Law enforcement and financial institutions have identified over 200 individual victims identified in Broward, Palm Beach, St. Lucie, Indian River, and elsewhere. Most of the victims are elderly and living in retirement communities. The financial institutions report more than $1,000,000 financial loss. While some arrests of persons' responsible for using the cards have been made by local police departments, the group tends to move operations to different counties when one area becomes too hot.

9. The person calling the banks is believed to be the same person. That person will use different phones to call the victims and the banking institutions. On occasion, the

person has been recorded pretending to be various victims in an effort to have the bank raise spending limits, approve transactions, or provide other information in furtherance of the fraud scheme. That person is also believed to switch phones frequently and use prepaid phones and/or fictitious subscriber information to make detection and collection of evidence by law enforcement more difficult.

10. Below are examples of the general scheme described above, in which the defendants have been identified as participants. Each of the banks described below ultimately suffered the financial loss. These banks do business in multiple states and are headquartered outside the State of Florida where the victims were located. Each of these banks is also FDIC-insured.

### TWO EXAMPLES INVOLVING STUBBS

#### December 10, 2018
#### Victim B.B. in Boynton Beach, Florida

11. On December 10, 2018, victim "B.B" received a phone call from "Ashley Johnson," who claimed that she was from the fraud department of Bank of America (BofA). Johnson told B.B. that her accounts were compromised and closed for her protection due to fraudulent activity. Johnson also told B.B that a suspect was caught fraudulently using her cards, that a bank representative would visit B.B.'s home to collect the compromised cards, and that new cards would be sent to B.B. in the mail.

12. B.B. then stated that "Kelly" came to her residence, quickly collected B.B.'s bank cards, and left. B.B. gave Kelly the following BofA cards, which were all in B.B.'s name: Credit card # 4017, Credit card # 5405, and Debit card # 4598. After Kelly left, B.B. became suspicious and called BofA, who denied sending a representative to her home, and determined that eleven fraudulent transactions were immediately made that same day using B.B.'s cards, with a total loss of 7,293.94.

13. B.B. subsequently identified STUBBS in a photo lineup as the woman who collected her bank cards. Detectives have obtained BofA video for fraudulent ATM transactions involving B.B.'s cards on December 10, 2018, which shows STUBBS using B.B.'s ATM cards.

### June 9, 2018
### Victim P.P. in Delray Beach Beach, Florida

14. On June 9, 2018, victim "P.P" stated that she received a phone call from a female caller who claimed she was with JP Morgan Chase Bank (CHASE), and that P.P.'s debit account had five possible fraudulent transactions. The caller spent over thirty minutes on the phone with P.P., and said she would send a CHASE representative to pick up the card. The caller also claimed that they had someone in custody on various charges and would provide more information later.

15. While P.P. was still on the phone with the purported CHASE employee, a woman claiming to be from CHASE arrived, and P.P. turned over her CHASE debit card #2739. The woman said she would be back in about twenty minutes with a new card and a booking photo of the person they had in custody. After not receiving a phone call or a return visit, P.P. contacted her bank, who advised that two withdrawals had already occurred from the account using debit card ending 2739, with a total loss of $3,303.00.

16. CHASE provided photographs for one of the ATM withdrawals for $3,000 using P.P.'s debit card, and law enforcement recognized STUBBS using P.P.'s debit card. P.P. subsequently identified STUBBS in a photo lineup as the person who took her bank debit card. P.P. also identified STUBBS in the ATM surveillance photograph as the same person who had collected her debit card.

### ONE EXAMPLE INVOLVING STUBBS AND VERNESSE
### February 2, 2017
### Victim E.K. in Plantation, Florida

17. Victim "E.K." stated that in January and February 2017, she received multiple calls from a female caller who identified herself as "Sandra Brown," and stated she was from BofA's Fraud Department. Sandra advised E.K. of fraud on all of her credit cards, causing E.K. to provide her full credit card numbers, personal information, and BofA banking information over the phone to confirm the fraud.

18. On or around February 1, 2017, Sandra called E.K., and said that a BofA employee would come pick up all of E.K.'s credit cards, and new credit cards would be issued. While E.K. was still on the phone with Sandra, a woman arrived and identified herself as a BofA employee. E.K. and her daughter described the woman's car as a four-

5

door green vehicle with rust or a poor paint job on the hood and trunk of the car. EK handed over 11 credit and debit cards in her name from multiple financial services and retail companies in her name.

19. E.K. noticed unauthorized charges on her credit cards and activity on her BofA accounts, and by February 2, 2019, E.K. contacted each company, confirmed the fraudulent activity, and closed all of the accounts. Analysis of the activity on E.K.'s cards showed that between January 30, 2017 and February 2, 2017, 9 of the cards were used for over $40,000 in attempted and completed fraudulent charges. There were also approximately $20,300 in fraudulent transfers from E.K.'s BofA savings account.

20. STUBBS and VERNESSE were captured on various surveillance videos using E.K.'s cards during the time the cards were fraudulently used. For example, Dollar Tree in Sunrise provided video for February 1, 2017. Law enforcement was able to identify VERNESSE attempting to use E.K.'s credit card #7279 for a purchase of $9.54, followed by STUBBS attempting to use E.K.'s credit card #4890 for a purchase of $139.00. While STUBBS is attempting to use E.K.'s card, VERNESSE is standing behind her. The $139.00 purchase was declined, and both STUBBS and VERNESSE hurriedly left the store.

21. Publix, which is located next to the Dollar Tree in Sunrise, also provided video surveillance. Law enforcement was able to identify VERNESSE attempting to make a purchase of $802.00 using E.K.'s credit card #7279. The purchase was declined and VERNESSE left without any merchandise. While VERNESSE attempted to make his purchase, STUBBS made a purchase at the customer service desk for $140.77 using E.K.'s credit card #4890. Publix in Plantation also provided video footage, which showed VERNESSE attempting to make a $402.01 purchase with E.K.'s credit card #4475, which was declined. VERNESSE then completed the purchase with a different credit card belonging to E.K., credit card #7654.

22. Approximately 16 money orders for $500 each were purchased at several Publix's using various bank cards belonging to E.K. During the course of the conspiracy, VERNESSE cashed a total of $25,930 worth of these money orders at one specific location. For example, Winn Dixie provided video for the two fraudulent purchases using E.K.'s debit card #6643. In the video, VERNESSE made two separate purchases for

money orders at the customer service desk. VERNESSE later cashed both money orders made out to his name from that purchase.

23. BofA also provided ATM surveillance photographs for the withdrawals using E.K.'s debit card. VERNESSE can be seen making the withdrawals.

24. E.K. was unable to identify anyone in a photo line-up. However, when shown surveillance video of STUBBS, E.K. identified her as the woman who collected her bank cards.

### THREE EXAMPLES INVOLVING CHARLES AND VERNESSE

### April 27, 2018
### Victim R.M. in Boynton Beach, Florida

25. On April 27, 2018, victim "R.M." received a call from a female who identified herself as a bank representative from Wells Fargo Bank, and said that R.M. had over $8,000 in questionable transactions. The female provided the victim with personal information including mother's maiden name and previous addresses, causing R.M. to believe that the caller was a bank employee, and to give additional personal information. The caller told R.M. that a bank representative would come to the house to collect compromised bank cards. CHARLES then arrived and collected R.M.'s Wells Fargo card ending in #0115. CHARLES said he would return with a new credit card for R.M., who stayed on the phone with the purported bank representative. After approximately 90 minutes, R.M. called Wells Fargo, who told R.M. that $8,000 worth of transactions had been completed using the credit card.

26. Publix provided video stills and transaction details for three Publix stores where R.M.'s card was used for purchases of money orders on April 27, 2018. Law enforcement was able to identify VERNESSE as the person in the Publix video stills using R.M.'s card.

27. R.M. also identified CHARLES in a photo lineup as the person who came to R.M.'s home and collected the debit card.

### February 19, 2018
### Victims E.W. & M.W. in Boynton Beach, Florida

28. On February 19, 2018, victim M.W. stated she received a phone call from "Kelly Fraccor," from BofA's Fraud Department. The caller stated that both M.W. and

7

E.W.'s accounts were compromised and used fraudulently, and claimed that they caught the person responsible and needed information and action from the victim. Fraccor requested personal and account information including the PIN to the cards, which the victim provided. Fraccor then said that a BofA representative would come to the house to pick up two Debit Cards.

29. CHARLES then arrived at the house claiming to be a BofA employee, causing M.W. to give CHARLES Debit Card #3790 in E.W.'s name, and Debit Card #9719 in M.W.'s name. M.W. and E.W. discovered that Debit Card #3790 was then used approximately 12 times, and Debit Card #9719 was used approximately 4 times. The total loss amount for both cards was approximately $17,023.32.

30. Publix provided video of transactions in which E.W. and M.W.'s cards were used. Law enforcement identified VERNESSE purchasing money orders for $1,502.67 and $1,303.74 with E.W.'s card ending in 3790. Law enforcement also identified CHARLES, who completed two transactions for $1,452.67 and $1,492.67 with M.W.'s card ending in 9719. Law enforcement identified CHARLES and VERNESSE in video from a different Publix completing two separate transactions each for $1,502.67 (for a total of four transactions).

31. M.W. identified CHARLES in a photo line-up as the person who retrieved the cards. Employees at Publix identified VERNESSE in a photo line-up as one of the subjects who purchased a money order at the Publix located at 8899 Hypoluxo Rd.

### October 15, 2017
### Victim D.J. in Margate, Florida

32. Victim "D.J." reported that on October 15, 2017, a female called and stated that she worked for the CHASE Fraud Department, that D.J.'s bank card was fraudulently used, and that someone from the bank would be coming collect the debit card. A short time later, a man matching CHARLES' description arrived, and D.J. turned over two CHASE debit cards in D.J.'s name: Debit Card #3277, and Debit Card #5877. When the man did not return as promised with new debit cards, D.J. contacted CHASE, who advised that four fraudulent transactions had been made, totaling $6,150.62.

33. D.J. was unable to identify anyone. However, a Publix employee identified both CHARLES and VERNESSE using a six-person lineup as the people who made two

fraudulent purchases at Publix with Debit Card #3277. Publix also provided video in which law enforcement identified CHARLES and VERNESSE. CHASE also provided ATM video stills of two $500 withdrawals made with Debit Card #5877, and law enforcement was able to identify VERNESSE using the debit card to complete the two $500 withdrawals.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Sarah Schaut
Task Force Officer, United States Secret Service

Sworn to before me in West Palm Beach, Florida, on March 10th, 2020.

_____
WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**PENALTY SHEET**

**Defendant's Name:** SHAUMBRICA STUBBS

**Case No:** 20-8116-WM

Count #: 1

Access Device Fraud

Title 18, United States Code, Section 1029(a)(2)

\* **Max.Penalty:** up to 10 years of imprisonment; up to 3 years of supervised release; up to a $250,000 fine, and a mandatory $100 special assessment

Count #: 2

Bank Fraud

Title 18, United States Code, Section 1344

\* **Max.Penalty:** up to 30 years of imprisonment; up to 5 years of supervised release; up to a $1,000,000 fine, and a mandatory $100 special assessment

Count #: 3

Aggravated Identity Theft

Title 18, United States Code, Section 1028A

\* **Max.Penalty:** a mandatory 2 year sentence, to be served consecutively to any other count of conviction, up to 1 year of supervised release; a $250,000 fine, and a mandatory $100 special assessment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** LUCLESSE VERNESSE

**Case No:** 20-8116-wm

Count #: 1

   Access Device Fraud

   Title 18, United States Code, Section 1029(a)(2)

\* **Max.Penalty:** up to 10 years of imprisonment; up to 3 years of supervised release; up to a $250,000 fine, and a mandatory $100 special assessment

Count #: 2

   Bank Fraud

   Title 18, United States Code, Section 1344

\* **Max.Penalty:** up to 30 years of imprisonment; up to 5 years of supervised release; up to a $1,000,000 fine, and a mandatory $100 special assessment

Count #: 3

   Aggravated Identity Theft

   Title 18, United States Code, Section 1028A

\* **Max.Penalty:** a mandatory 2 year sentence, to be served consecutively to any other count of conviction, up to 1 year of supervised release; a $250,000 fine, and a mandatory $100 special assessment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**PENALTY SHEET**

**Defendant's Name:** SAMUEL CHARLES

**Case No:** 20-8116 - WM

Count #: 1

Access Device Fraud

Title 18, United States Code, Section 1029(a)(2)

**\* Max.Penalty:** up to 10 years of imprisonment; up to 3 years of supervised release; up to a $250,000 fine, and a mandatory $100 special assessment

Count #: 2

Bank Fraud

Title 18, United States Code, Section 1344

**\* Max.Penalty:** up to 30 years of imprisonment; up to 5 years of supervised release; up to a $1,000,000 fine, and a mandatory $100 special assessment

Count #: 3

Aggravated Identity Theft

Title 18, United States Code, Section 1028A

**\* Max.Penalty:** a mandatory 2 year sentence, to be served consecutively to any other count of conviction, up to 1 year of supervised release; a $250,000 fine, and a mandatory $100 special assessment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-8116-WM

UNITED STATES OF AMERICA

vs.

SHAUMBRICA STUBBS,
LUCLESSE VERNESSE, and
SAMUEL CHARLES,
                Defendants.
_____/

### CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? Yes ___ No **X**

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? Yes ___ No **X**

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: /s/ Susan R. Osborne
Susan R. Osborne
Assistant United States Attorney
Court No. A5500797
500 South Australian Ave, Suite 400
West Palm Beach, Florida 33401
TEL (561) 209-1003